NOTICE
Decision filed 07/14/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240743-U

NO. 5-24-0743

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Johnson County. |
| | ) | |
| v. | ) | No. 21-CF-70 |
| | ) | |
| LARRY D. CAVITT, | ) | Honorable |
| | ) | Cord Z. Wittig, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Justices Vaughan and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the judgment of the trial court where the trial court did not err in admitting an autopsy report certified by the county coroner.

¶ 2    The defendant, Larry D. Cavitt, was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2020)) after a bench trial. The defendant appeals the conviction, arguing that the trial court committed plain error by improperly admitting an undated autopsy report that had been stamped as "not for legal use." For the reasons that follow, we affirm.

¶ 3                                      I. BACKGROUND

¶ 4    On August 30, 2021, the State charged the defendant with two counts of first degree murder (*id.*; *id.* § 9-1(a)(2))) and one count of aggravated battery with a firearm (*id.* § 12-3.05(e)(1)). The

1

charges stemmed from an incident that occurred on August 28, 2021, where the defendant shot his stepbrother, Joseph Geyman, following an argument.

¶ 5 The trial commenced on February 12, 2024, and concluded on February 23, 2024. We summarize the relevant portion of the proceedings below.

¶ 6 During the second day of the trial, the State called Johnson County Coroner, David Rockwell, to testify. Rockwell first testified that on the day of the shooting, his presence was requested at the scene. There, Rockwell pronounced the victim legally dead.

¶ 7 Rockwell then testified that he ordered and attended the autopsy of the victim, Joseph Geyman. Medical examiner, Dr. John Heidingsfelder, conducted the autopsy at the Williamson County morgue in Marion, Illinois, on August 31, 2021. Rockwell testified that Dr. Heidingsfelder passed away prior to the trial but had sent the final autopsy report to the coroner's office prior to his death. Rockwell also testified that Dr. Heidingsfelder provided a preliminary report on the day of the autopsy, and that reports were not finalized until toxicology and tissue sample testing were complete. Rockwell verified that the final autopsy report was created in the ordinary and usual course of Dr. Heidingsfelder's duty as a medical examiner. He testified that the coroner's office keeps copies of autopsy reports as a matter of course.

¶ 8 The State then presented a copy of the final autopsy report to Rockwell. Rockwell verified the authenticity of the document as a true and accurate copy of the report submitted by Dr. Heidingsfelder. Rockwell testified that the autopsy certification was Dr. Heidingsfelder's autopsy number and signature. Rockwell further verified that the front page of the autopsy report had his seal as the Johnson County Coroner. The State then submitted the autopsy report into evidence pursuant to the Code of Criminal Procedure of 1963 (725 ILCS 5/115-5.1 (West 2020)).

¶ 9    Defense counsel then performed a *voir dire* examination on Rockwell. During the *voir dire*, Rockwell testified that Dr. Heidingsfelder electronically signed the autopsy report. Rockwell testified that he would have received the report approximately six to eight weeks after the autopsy because that was how long it took the toxicology lab to complete testing. Rockwell testified that the report was dated August 31, 2021, the day of the autopsy. He agreed that the electronic signature was not dated and that the autopsy report had no date of receipt. Rockwell testified that his stamp was below Dr. Heidingsfelder's signature and that it said, "Copy, State of Illinois, County of Johnson, Coroner. Not for insurance purposes or not for legal purposes." Rockwell explained that the stamp was applied to documents provided for attorneys and for information purposes as there was usually a cost for paperwork from his office and that the original did not have that stamp. Rockwell testified that the original was still on file at the office. He further testified that the copy at the trial was given to the state's attorney upon request, and he did not know when the copy was provided to the state's attorney. Rockwell finally testified that he filed the autopsy reports upon receipt.

¶ 10    After completing the *voir dire* examination, defense counsel argued that a proper foundation had not been laid for the admission of the copy of the autopsy report. In support, defense counsel argued that the document was stamped "not for legal purposes," that the digital signature was undated, and that there was no date of receipt for when the coroner's office received the report. The State argued that a certified copy of an autopsy report met the statutory requirements and that a stamp did not override the statute. The trial court admitted the autopsy report, stating that the "statute just require[d] that it be kept in the ordinary business of the coroner, certified by the coroner."

¶ 11    The State finished direct examination by confirming that the victim's death was caused by a gunshot wound to the head, which would be listed as a homicide.

¶ 12    On cross-examination, Rockwell testified that during his observation of the autopsy, he did not see anyone weigh the victim or measure his height. From the autopsy report, Rockwell testified that the victim's height was marked as approximately 6-feet and 3-inches. Rockwell discussed the autopsy with Dr. Heidingsfelder immediately following the autopsy, but Rockwell did not recall discussing the autopsy at a later time. Defense counsel then presented a copy of the victim's driver's license to be entered into evidence. Rockwell agreed that the driver's license stated the victim's height as 6-feet and 3-inches and weight as 230 pounds. Rockwell testified that he received the final autopsy report prior to Dr. Heidingsfelder's death but could not say when exactly Dr. Heidingsfelder died. Rockwell additionally testified that he did not affix his seal to the copy of the autopsy report until the state's attorney requested it and that the original did not have the seal. Rockwell further testified that he did not sign autopsy reports as that was not part of his responsibilities. Finally, Rockwell testified that it was not his practice to put receipts on any of the autopsy reports sent to his office. There was no redirect.

¶ 13    After several more witnesses for both the State and the defendant, the trial was concluded on February 23, 2024. The trial court found the defendant guilty on all counts. At the sentencing hearing on May 17, 2024, counts II and III were merged into count I, and the defendant was sentenced to 50 years in prison to be followed by 3 years of mandatory supervised release. Following sentencing, defense counsel argued for the defendant to be released on bond pending appeal. Defense counsel argued that the purpose of the appeal would not be for delay and would raise substantial questions of law or fact. In support, defense counsel stated that the defendant intended to appeal the admission of the autopsy report into evidence, as the medical examiner was

deceased, the report was stamped that it was not to be used for legal purposes, and the report's admission deprived the defendant of his constitutional rights. The trial court denied the motion, stating that it would not second-guess its decision and did not believe that this court would reverse the decision.

¶ 14   This appeal followed.

¶ 15                                        II. ANALYSIS

¶ 16   On appeal, the defendant argues that he was denied a fair trial where the autopsy report was improperly admitted. He contends that the autopsy report was not duly certified by the testifying county coroner, Rockwell could not be verified as accurate as the medical examiner's electronic signature was undated, and was not created for legal purposes. He further contends that the improper admission of the autopsy report is not harmless error as the admission violates his fourteenth amendment right to due process as without the autopsy report, more avenues would have been available to support his claim of self-defense. In setting forth this argument, the defendant acknowledges that he failed to file a posttrial motion in accordance with Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, the defendant contends that Illinois courts have recognized an exemption to the posttrial motion requirement when the appeal arises from a bench trial. Alternatively, the defendant argues that the admission of the autopsy report should be reviewed under the second prong of the plain-error doctrine.

¶ 17   The controlling case regarding the requirement for posttrial motions is *Enoch* (*id.*). In *Enoch* our supreme court stated, "Prior to 1963, a motion for a new trial was not required when the trial was before the court and not a jury, but the language of section 116-1 has changed the law in that respect and a written motion for a new trial is now required in both jury and nonjury cases."

*Id.* at 187-88. In support of his argument for a bench trial exemption, the defendant cites two Second District cases, *People v. Brownell*, 123 Ill. App. 3d 307 (1984), and *People v. DiPace*, 354 Ill. App. 3d 104 (2004). As *Brownell* was decided prior to *Enoch*, we will not consider it here. As for *DiPace*, the Second District held that "a posttrial motion is not necessary to preserve questions in a bench trial if the issues were presented to the trial court." *DiPace*, 354 Ill. App. 3d at 107. However, we hold with the Third District that our supreme court was unequivocal when it stated that a written motion is required in both jury and non-jury trials and thus "the proposition in question—that a defendant does not have to raise an issue in a posttrial motion after a bench trial to preserve it for appeal—ceased to exist as valid precedent in Illinois when *Enoch* was decided in 1988." *People v. De la Hera*, 2011 IL App (3d) 100301, ¶ 7. As such, we do not recognize a bench trial exemption for the absence of a posttrial motion, and the defendant must show that the admission of the autopsy report into evidence was second prong plain error.

¶ 18 The plain-error rule is a narrow and limited exception to the general rule of forfeiture. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). Under the plain-error doctrine, a reviewing court will review an unpreserved error when a clear and obvious error occurs and (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against defendant or (2) the alleged error is so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). The first step in the plain-error analysis under either prong is determining whether an error occurred. *Id.* at 565.

¶ 19 The defendant argues that the trial court erred in admitting the autopsy report as it was not duly certified under Illinois law. The defendant claims that the autopsy lacks certification as there was no date of receipt by the Coroner's Office for the report. Alternatively, the defendant argues

that the autopsy report cannot be verified as accurate as the report was electronically signed and lacks a date for the signature. Therefore, it cannot be confirmed when Dr. Heidingsfelder signed the report. In support of this argument, the defendant cites *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1074 (N.D. Ill. 2015), where the United States District Court for the Northern District of Illinois found that a contract could not be authenticated as it was not physically signed, and no witnesses could affirm that the digital signature belonged to the plaintiff in that matter. Finally, the defendant argues that the autopsy report was ineligible to be admitted into evidence as it was stamped by the Coroner's Office as being "not for legal purposes."

¶ 20    The admissibility of evidence is a matter within the sound discretion of the trial court and thus will not be overturned absent an abuse of discretion. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991). An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.* Further, the admissibility of an autopsy report is statutory, and its admission is proper when the elements of the statute are met.

¶ 21    Section 115-5.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-5.1 (West 2022)) provides:

> "In any civil or criminal action the records of the coroner's medical or laboratory examiner summarizing and detailing the performance of his or her official duties in performing medical examinations upon deceased persons or autopsies, or both, and kept in the ordinary course of business of the coroner's office, duly certified by the county coroner or chief supervisory coroner's pathologist or medical examiner, shall be received as competent evidence in any court of this State, to the extent permitted by this Section. These reports, specifically including but not limited to the pathologist's protocol, autopsy reports

7

and toxicological reports, shall be public documents and thereby may be admissible as *prima facie* evidence of the facts, findings, opinions, diagnoses and conditions stated therein.

* * *

Persons who prepare reports or records offered in evidence hereunder may be subpoenaed as witnesses in civil or criminal cases upon the request of either party to the cause. However, if such person is dead, the county coroner or a duly authorized official of the coroner's office may testify to the fact that the examining pathologist, toxicologist or other medical or laboratory examiner is deceased and that the offered report or record was prepared by such deceased person. The witness must further attest that the medical report or record was prepared in the ordinary and usual course of the deceased person's duty or employment in conformity with the provisions of this Section."

Thus, for an autopsy report to be properly admitted, it needs to be (1) kept in the ordinary business of the coroner's office and (2) duly certified by the county coroner or chief supervisory coroner's pathologist or medical examiner. In the case where the examiner who prepared the report is deceased, such as in this matter, the county coroner may testify that the examiner is deceased and that the offered report was prepared by the deceased person. The witness must also attest that the autopsy report was prepared in the ordinary and usual course of the examiner's duty or employment. *Id.*

¶ 22     We find that the State met the statutory requirements for the admission of the autopsy report. Here, the autopsy had been performed by Dr. Heidingsfelder and observed by the county coroner, Rockwell. Per Rockwell's testimony, the autopsy report was prepared by the deceased Dr. Heidingsfelder in his ordinary business as a medical examiner. Dr. Heidingsfelder signed the

8

autopsy report using an electronic signature and submitted it to the coroner's office with his signature and autopsy report number acting as his certification. Rockwell confirmed that Dr. Heidingsfelder passed away prior to the trial and that the final autopsy report was submitted to the coroner's office by Dr. Heidingsfelder prior to his death. It was kept by the Johnson County coroner in the ordinary course of business. The coroner, Rockwell, certified the autopsy report submitted at trial by affixing the seal of the Johnson County Coroner's Office to the document and by his testimony that the autopsy report was a copy of the original on file at his office.

¶ 23 We do not find the argument set forth in *Pearson*, 123 F. Supp. 3d at 1074, to be compelling as that case involved a contract dispute and not business records. Further, the statute does not require a signature, a dated signature, nor a date of receipt for an autopsy report to be properly admitted. 725 ILCS 5/115-5.1 (West 2022). As the State met the statutory requirements, it was not an abuse of discretion for the trial court to admit the autopsy report into evidence.

¶ 24 Finally, regarding the stamp stating, "not for legal purposes," on the autopsy report, we find that the trial court's decision to admit the autopsy report to be reasonable. While the *copy* of the autopsy report was stamped "not provided for legal purposes," the original autopsy report states no such thing. Rockwell testified that the report had been stamped as "not for legal or insurance purposes," due to there being a fee for records from the coroner's office. Rockwell then confirmed that the submitted report was otherwise a true and accurate copy of the report on file at his office. Therefore, it was reasonable that the trial court admitted a copy of the autopsy report into evidence when the only difference between a copy prepared "not for legal purposes" and prepared for legal purposes was a stamp. Therefore, the trial court did not abuse its discretion.

9

¶ 25    Since the defendant failed to prove that the trial court abused its discretion in allowing the autopsy report to be admitted into evidence, we find that the trial court has not committed error. As there was no error, there cannot be plain error.

¶ 26                                   III. CONCLUSION

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court of Johnson County.


¶ 28    Affirmed.